UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GABRIEL GONZALEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROY P. MACHADO, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-02203-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>Re: ECF No. 85 |

## INTRODUCTION

Plaintiff Gabriel Gonzalez, who has physical disabilities, cannot walk, and uses a wheelchair for mobility, sued the defendants for violations of the Americans with Disabilities Act of 1990 ("ADA") and the Unruh Civil Rights Act after he visited their taqueria and was unable to sit at a table because the table legs did not "allow for the proper toe clearance."[1] The parties settled the case.[2] The damages settlement was $6,000.[3] The parties did not settle the fees (although on March 25, 2019, the defendants' counsel offered $18,000 for fees, and the plaintiff accepted the offer on

---

[1] Compl. – ECF No. 1 at 1-3 (¶¶ 1–5, 13). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Settlement – ECF No. 80 at 1.

[3] Opp. – ECF No. 87 at 2.

ORDER – No. 17-cv-02203-LB

April 1, 2019).[4] The deal apparently was not consummated, and the plaintiff moved for $39,565 in fees and $1,260 in costs for a total of $40,825.[5] The defendants oppose the fees as unreasonable on the grounds that (1) seven attorneys expending 70.1 hours on a non-complex case with no discovery is excessive (contrasting his own fees of $5,000), and (2) the hourly rates are excessive.[6] The court can decide the motion without oral argument. N.D. Cal. Civ. L. R. 7-1(b). The court awards $18,787.50 in fees and $1,260 in costs.

## STATEMENT

### 1. Relevant Procedural History

The plaintiff filed the complaint on April 20, 2017.[7] The defendants answered on May 15, 2017.[8] On August 11, 2017, the parties conducted a joint-site inspection, and the parties thereafter filed a notice for need of mediation on September 22, 2017.[9] A pre-mediation phone conference was held on November 21, 2017.[10] On December 19, 2017, the parties filed a joint notice that the case had settled and they would file a stipulated dismissal within sixty days.[11] They did not file it.[12]

On March 19, 2018, the plaintiff reported that "[d]espite due diligence by [the] Plaintiff, signatures on the settlement documents and funding of the settlement remain outstanding from [the] Defendant."[13] Defense counsel did not appear at the March 29 case-management conference,

---

[4] Emails – ECF No. 85-8 at 3.
[5] Billing Records – ECF No. 85-4 at 1.
[6] Opp. – ECF No. 87 at 1-2.
[7] Compl. – ECF No. 1.
[8] Answer – ECF No. 8.
[9] Joint Case-Management Statement – ECF No. 40 at 6; Notice – ECF No. 19 at 1.
[10] ADR Remark – ECF No. 24.
[11] Joint Notice of Settlement – ECF No. 25 at 2.
[12] Clerk's Notice – ECF No. 27.
[13] Joint Status Report – ECF No. 28 at 2.

and the court ordered the defendants to show cause why the settlement documents had not been finalized and set a hearing for April 19, 2018.[14]

On April 19, defense counsel reported that he had lost contact with his clients.[15] The court set a further case-management conference for May 31, 2018 and directed the parties to submit a joint update before the conference.[16] On May 17, 2018, the parties filed a joint case-management statement that did not clarify whether defense counsel had regained contact with his clients.[17] The court asked for a further joint update by May 21, 2018,[18] and on that date, the plaintiff reported that he had tried to contact defense counsel and received no response.[19] The court issued another order to show cause "why the settlement agreement has not been signed, why the agreed-upon settlement consideration has not been delivered, and why the court should not strike the defendants' answer."[20] On June 4, 2018, the defendants responded that they did not have the money to pay the plaintiff's settlement demand, asked for a trial date, and asked for an early settlement conference or mediation where the parties might settle on a payment plan."[21]

On June 11, 2018, the court referred the case for a settlement conference.[22] The settlement judge had two scheduling calls with the parties on July 18, 2018 and August 3, 2018, set an in-person settlement conference for September 21, 2018, and ordered the parties to lodge settlement statements by September 11, 2018.[23] The defendants did not file their statement, and on September 13, 2018, the settlement judge ordered them to do so by 9 a.m. the next day.[24] When they did not,

---

[14] Minute Entry – ECF No. 34.
[15] Minute Entry – ECF No. 38.
[16] *Id.*; Clerk's Notice – ECF No. 39.
[17] Joint Case-Management Statement – ECF No. 40; Clerk's Notice – ECF No. 41.
[18] Clerk's Notice – ECF No. 41.
[19] Status Report – ECF No. 42 at 1.
[20] Order to Show Cause – ECF No. 43 at 2.
[21] Response to Order to Show Cause – ECF No. 47 at 1–2.
[22] Order Referring Case – ECF No. 52.
[23] Minute Entry – ECF No. 57; Minute Entry – ECF No. 59.
[24] Order – ECF No. 60.

1  she vacated the settlement conference and ordered the parties to schedule a new date.[25] On
2  September 23, 2019, the undersigned ordered the parties to contact the settlement judge to
3  schedule a new date.[26] They ultimately had a settlement conference on March 8, 2019, where the
4  case settled (except for fees). [27]

### 2. Facts Relevant to Attorney's Fees Motion

#### 2.1 The Parties' Settlement Discussions

On May 17, 2019, the plaintiff reported that he had "been in an extended [meet and confer] process with counsel for Defendants, Michael Welch, where it was believed that an agreement had been reached on the planned motion for attorney's fees. However, this agreement has fallen through as it appears that counsel for Defendant never had authority to convey the offer that was accepted."[28] In an e-mail exchange, the defense counsel suggested an $18,000 settlement for fees on March 25, 2019, and the plaintiff accepted that amount on April 1, 2019.[29] By April 23, 2019, defense counsel responded that the defendants were "trying to figure out how to divide it."[30] On May 22, 2019, the plaintiff filed the fees motion, and on June 5, 2019, the defendants opposed it.[31]

#### 2.2 Attorneys, Billing Records, Requested Hourly Rates, and Requested Hours

The following chart summarizes the hourly rates and hours billed by twelve attorneys.[32]

---

[25] Order – ECF No. 61.

[26] 9/23/2018 Docket Entry.

[27] Clerk's Notice – ECF No. 62; Order Granting Stipulation – ECF No. 67; Minute Entry – ECF No. 79; Notice of Settlement – ECF No. 80.

[28] Status Update – ECF No. 82 at 1.

[29] E-mails – ECF 85-8 at 3.

[30] *Id.* at 1

[31] Mot. – ECF No. 85-1; Opp. – ECF No. 87.

[32] Billing Records – ECF No. 85-4 at 1–19.

| Attorney | Requested Rate | Requested Hours | Total Fees |
|---|---|---|---|
| Mark Potter | $650 | 17.7[33] | $11,505 |
| Russell Handy | $650 | 6.0 | $ 3,900 |
| Phyl Grace | $650 | 11.2 | $ 7,280 |
| Mary Melton | $500 | 3.6 | $ 1,800 |
| Dennis Price | $500 | 17.0 | $ 8,500 |
| Chris Carson | $500 | 1.1 | $ 550 |
| Amanda Seabock | $500 | 4.0 | $ 2,000 |
| Isabel Masanque | $500 | .5 | $ 250 |
| Khushpreet Mehton | $500 | 1.0 | $ 500 |
| Sara Gunderson | $410 | 1.1 | $ 451 |
| Prathima Reddy Price | $410 | 5.9 | $ 2,419 |
| Farrell Goodman | $410 | 1.0 | $ 410 |
| **All Attorneys** | | 70.1 | $39,565 |

Mark Potter, an attorney on the case and the managing partner for the Center for Disability Access, submitted a declaration in support of the fees motion.[34] He has "devoted more than 95% of [his] practice to disability issues for 20 years[,]" been involved in disability rights organizations, given ADA seminars throughout California, litigated over 2,000 disability cases, and appeared on the news as an ADA expert.[35]

Mr. Potter summarized the other attorneys' qualifications.

---

[33] This includes an estimated 10.5 hours for the following entries: "reviewed billing; removed items that could be taken as duplicative or unreasonable; redacted as appropriate;" "Drafting the plaintiff's fee motion with [supporting] paperwork'" and "Time to review opposition brief, draft the reply brief, attend oral argument." Billing Records – ECF No. 85-4 at 19.

[34] Potter Decl. – ECF No. 85-3 at 1 (¶ 2).

[35] *Id.* at 2 (¶ 6).

Russell Handy "graduated Magna Cum Laude from California Western, has taught as an adjunct professor, has clerked for the Ninth Circuit Court of Appeals, and has devoted his private practice to disability litigation for the last 19 years."[36] He has prosecuted over one thousand ADA cases, over forty trials, has been named one of San Diego's "Top Attorneys" by a local periodical, received an award for his disability work, and has appeared on the news as an ADA expert.[37]

Phyl Grace has been practicing law for over twenty-two years, focusing on disability issues for ten.[38] She has litigated hundreds of civil-rights cases and has substantial litigation experience.[39]

Mary Melton graduated from the UC Davis School of Law in 1992, has been licensed to practice for twenty-four years, and has significant litigation experience in several areas of law.[40]

Dennis Price graduated from Loyola Law School in 2011, clerked for the California Court of Appeal, and worked for a large non-profit firm before joining Potter Handy.[41] He has been involved in litigating hundreds of disability-rights cases.[42]

Chris Carson graduated from California Western School of Law in 2011, where she was a writer and editor for two journals, and she has litigated disability-access cases for more than five years.[43]

Amanda Seabock graduated from California Western School of Law in 2011, where she served as a representative to the Student Bar Association and participated in various other activities.[44] She

---

[36] *Id.* at 2–3 (¶ 7).
[37] *Id.* at 3 (¶ 7).
[38] *Id.* (¶ 8).
[39] *Id.*
[40] *Id.* (¶ 9).
[41] *Id.* at 4 (¶ 10).
[42] *Id.*
[43] *Id.* (¶ 11).
[44] *Id.* at 4–5 (¶ 12). The billing records are under two last names: Seabock and Lockhart.

joined Potter Handy in 2012 first as an intern and then as an attorney.[45] She began overseeing the firm's disability-rights cases in California's Northern District in 2018.[46]

Isabel Masanque graduated cum laude from California Western School of Law in 2012, where she was a writer and editor for two of the school's journals.[47] She interned for the San Diego Public Defender's Office and began her career at the Center for Disability Access in 2012 first as an intern and then as an attorney after her admission to the bar in 2013.[48]

Khushpreet Mehton graduated from California Western School of Law in 2010 and has litigated hundreds of civil-rights cases throughout California since 2011.[49] He has tried two Title III cases in the Central and Southern Districts of California.[50]

Sara Gunderson graduated from California Western School of Law in 2013, where she participated in a number of school clubs and activities.[51] She has worked exclusively on disability-civil-rights cases for the last two years.[52]

Prathima Reddy Price graduated from Case Western Reserve University School of Law and has litigated various civil-rights cases.[53] She obtained "one of the highest settlements in the history of New York State" in a suit against the Department of Corrections and Community Supervision.[54]

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 5–6 (¶ 13).

[48] *Id.*

[49] *Id.* at 6 (¶ 14).

[50] *Id.*

[51] *Id.* (¶ 15).

[52] *Id.*

[53] *Id.* at 7 (¶ 16).

[54] *Id.*

Farrell Goodman graduated from Pepperdine University School of Law in 1985 and has substantial civil-litigation experience, including jury and bench trials.[55] He has been a mediator and arbitrator in Ohio, and (as a solo practitioner) was outside counsel for several corporations.[56]

Mr. Potter stated that because his practice relies on billing at a market rate, he has "extensive experience with respect to what attorneys specializing in disability law and civil rights bill for civil litigation and what courts are routinely awarding and can attest that the rates billed by the Center for Disability Access for its attorneys are well within market rates."[57]

## ANALYSIS

### 1. Legal Standards

The federal and state statutes authorize fees for the claims in the complaint. In an ADA case, a district court has the discretion to award the prevailing party reasonable attorney's fees. 42 U.S.C. § 12205. "The Supreme Court has explained that, in civil rights cases, the district court's discretion is limited. A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks and citations omitted). The Unruh Act allows for attorney's fees as "may be determined by the court." Cal. Civ. Code § 52.

"A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. The district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (internal quotation marks and citations omitted).

---

[55] *Id.* (¶ 17).

[56] *Id.*

[57] *Id.* at 8 (¶ 19).

ORDER – No. 17-cv-02203-LB    8

California state and federal courts use the lodestar method to determine a reasonable fee award.[58] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The next two sections address the hourly rates and the hours billed.

**1.1 Hourly Rates**

The defendants ask the court to reduce the rates "to the hourly rate established in this District."[59] The court follows the weight of authority in this district and reduces the hourly rates.

The district court must determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This task is "inherently difficult." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). To assist with the determination, the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210-11. This community is typically that in which the district court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The burden is on the fee applicant to show his or her fee is in line with prevailing market rates. *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Widrig v. Apfel*, 140 F.3d 1207, 1209-10 (9th Cir. 1998) (declarations by attorneys regarding the prevailing market rate in the community may be enough to establish a reasonable rate in the market). In some cases, the court may look outside of the forum community for rates if local counsel is unavailable "either

---

[58] As "California law is materially similar to federal law in determining the reasonableness of attorneys' fees[,]" this order cites federal law. *Malem Med., Ltd. v. Theos Med. Sys., Inc.*, No. 13–cv–05236–EMC, 2017 WL 5153300, at n.1 (N.D. Cal. Nov. 7, 2017).

[59] Opp. – ECF No. 87 at 2.

ORDER – No. 17-cv-02203-LB                     9

because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (following other circuit courts).

The court reduces the hourly rate for Mark Potter, Russell Handy, and Phyl Grace from $650 to $425, which is the rate awarded by other courts in this district.[60] In a recent Northern District case involving the lack of accessible parking, the court — invoking other cases — awarded each $425 per hour. *See Johnson v. Autozone, Inc.*, No. 17-cv-02941-PJH, 2019 WL 2288111, at *6 (N.D. Cal. May 29, 2019) (collecting cases).

The court reduces the hourly rate for Mary Melton, Dennis Price, Isabel Masanque, Chris Carson, Amanda Seabock, and Khushpreet Mehton from $500 to $300, again following *Johnson v. Autozone*. *Id.* at *7 (collecting cases and analyzing fee awards).

The court reduces the hourly rate for Sara Gunderson, Farrell Goodman, and Prathima Reddy Price from $410 to $250. *See id.* (collecting cases and awarding a $250 hourly rate for junior attorneys, including Ms. Gunderson).

**1.2  Hours Expended on Litigation**

The defendants contend that (1) the 70-plus hours in the case are excessive given the lack of complexity (no discovery and one site inspection) and the lawyers' expertise, (2) the court should disregard the fees incurred by Mr. Potter and Mr. Handy (or at least discount their hourly rate) because their work "could have been easily handled by less senior attorneys in their office," and (3) as a result, the court should look at the hours for the other lawyers "with suspicion."[61] The court already discounted the hourly rates and — on the modest two-page briefing by the defendants — will not reduce the rates further. It reduces the hours billed by 14.6 hours.

The fee-seeking party bears the initial burden to prove the reasonableness of hours expended using detailed time records documenting completed tasks and time expended. *Hensley*, 461 U.S. at 437; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). The district court may

---

[60] Mot. – ECF No. 85-1 at 8–9.
[61] Opp. – ECF No. 87 at 2.

reduce an award if the documentation is inadequate or if it finds that some of the hours were not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. The opposing party then bears the burden of challenging the accuracy and reasonableness of the hours charged. *Deukmejian*, 987 F.2d at 1397–98. This must be done by specifically identifying defects or deficiencies in the requested hours; conclusory or unsubstantiated objections are insufficient to warrant a reduction. *Cancio v. Fin. Credit Network, Inc.*, No. C 04-03755 TEH, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). The court also must conduct an independent review of the fees for reasonableness. *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995). A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion) (quotations and citations omitted).

The plaintiff's counsel provided detailed billing records. The defendants did not challenge the "accuracy and reasonableness of the hours charged" by specifically identifying defects or deficiencies in the requested hours and instead made only conclusory or unsubstantiated objections. *Deukmejian*, 987 F.2d at 1397-98. The court somewhat addressed the challenge to senior lawyers performing junior-lawyer tasks by reducing the hourly rate. In any event, Messieurs Mr. Potter and Mr. Handy "have established a process of being involved at the beginning of cases."[62] The billing records support this conclusion and show more involvement early in the case and Mr. Potter's limited periodic review thereafter.[63] The court does not second-guess the staffing decisions on this record. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) ("[The court] may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests."). Also, the billing records show that work in the case was delegated to junior attorneys.

The court also reviewed the hours billed for reasonableness.

---

[62] Reply – ECF No. 88 at 3.

[63] Billing Records – ECF No. 85-4 at 1–19.

ORDER – No. 17-cv-02203-LB 11

First, the billing records frequently include time entries for 0.1 hours. "Although a one-tenth hour timekeeping practice is generally reasonable and [a] careful review of filings should be encouraged, billing 0.1 hours for certain practices sometimes requires a reduction." *Jacobson v. Persolve, LLC*, No. 14-cv-00735-LHK, 2016 WL 7230873, at *10 (N.D. Cal. Dec. 14, 2016) (internal quotation marks omitted) (citing *Kalani v. Starbucks Corp.*, No. 13-cv-00734-LHK, 2016 WL 379623, at *8 (N.D. Cal. Feb 1, 2016)). The court identified 62 billing entries, mostly for 0.1 hours (and several for 0.2 or 0.3 hours) for Messieurs Potter and Handy for tasks that include telling an assistant to email a copy to the Center for Disability Access, reviewing the summons and the initial ADA scheduling order, reviewing the consent notice, and reviewing other administrative docket entries. The total hours are 6.6 hours. "While reviewing such notices takes some amount of time, experienced counsel must exercise billing judgment to avoid excessive accumulation of 0.1 hour entries in reviewing such routine documents and court communications." *Kalani*, 2016 WL 379623, at *8. Following *Jacobson* and *Kalani*, the court reduces the hours by 50% to 3.3 hours. Phyl Grace also repeatedly billed 0.1 and 0.2 hours (for a total of 6.6 hours) for telling her assistant to call or email the defense,[64] and the court reduces the hours to 3.3.

Second, the plaintiff estimated the time for the fees motion: (1) one half-hour to review the billing, eliminate duplicative or unreasonable fees, and redact as appropriate, (2) two hours to draft the fees motion, and (3) eight hours to write the reply, prepare for oral argument, and attend oral argument.[65] The plaintiff did not submit supplemental billing records with the reply. The court is not holding oral argument, which eliminates that time, and also eliminates the eight hours for lack of a submission about the time that the tasks actually took. *Autozone*, 2019 WL 2288111, at *8 (citing *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district

---

[64] Billing Records – ECF No. 85-4 at entries 11/28/17, 12/12/17, 12/19/17, 12/27/17, 1/2/18, 1/8/18, 1/9/18, 1/11/18, 1/16/18, 1/19/18, 1/24/18, 1/29/18, 2/2/18, 2/7/18, 2/12/18, 2/13/18, 2/16/18, 2/19/18, 2/21/18, 2/26/18, 2/28/18, 3/5/18, 3/8/18, 3/13/18, 3/15/18, 3/20/18, 3/22/18, 3/28/18, 4/4/18, 4/5/18, 4/6/18, 4/10/18, 4/13/18, 4/17/18, 4/18/18, 4/23/18, 4/26/18, 4/27/18, 5/1/18, 5/7/18, 5/21/18, 6/4/18, 6/7/18, 6/13/18, 7/17/18, 7/24/18, & 7/30/18.

[65] Billing Records – ECF No. 85-4 at 19.

court may reduce the award accordingly.")). The court deducts eight hours for category 3 but awards the 2.5 hours for categories 1 and 2 because the filings show that the hours are reasonable.

## CONCLUSION

The court awards $18,787.50 as reasonable lodestar fees.

| Attorney | Hourly Rate Sought | Hourly Rate Awarded | Hours Sought | Hours Awarded | Fees Sought | Fees Awarded |
|---|---|---|---|---|---|---|
| Mark Potter | $650 | $425 | 17.7 | 7.1 | $11,505 | $3,017.50 |
| Russell Handy | $650 | $425 | 6.0 | 5.3 | $ 3,900 | $2,252.50 |
| Phyl Grace | $650 | $425 | 11.2 | 7.9 | $ 7,280 | $3,357.50 |
| Mary Melton | $500 | $300 | 3.6 | 3.6 | $ 1,800 | $1,080 |
| Dennis Price | $500 | $300 | 17.0 | 17.0 | $ 8,500 | $5,100 |
| Chris Carson | $500 | $300 | 1.1 | 1.1 | $ 550 | $ 330 |
| Amanda Seabock | $500 | $300 | 4.0 | 4.0 | $ 2,000 | $1,200 |
| Isabel Masanque | $500 | $300 | .5 | .5 | $ 250 | $ 150 |
| Khushpreet Mehton | $500 | $300 | 1.0 | 1.0 | $ 500 | $ 300 |
| Sara Gunderson | $410 | $250 | 1.1 | 1.1 | $ 451 | $ 275 |
| Prathima Reddy Price | $410 | $250 | 5.9 | 5.9 | $ 2,419 | $1,475 |
| Farrell Goodman | $410 | $250 | 1.0 | 1.0 | $ 410 | $ 250 |
| TOTAL | | | 70.1 | 55.5 | $39,565 | $18,787.50 |

The defendants do not oppose costs of $1,260, and the court awards them.

**IT IS SO ORDERED.**

Dated: July 10, 2019

LAUREL BEELER
United States Magistrate Judge